### THE TAIHO MARU. THE ALATRIUM. THE LORDSHIP MANOR. KOKUSAI KISEN KABUSHIKI KAISHA v. KINGDOM OF ITALY et al.

(Circuit Court of Appeals, Fifth Circuit. December 18, 1923.)

#### No. 4013.

**Collision ⊚⊃74—Parting of lines of two moored steamships, causing collision with third vessel, held due to faults of both steamships.**

Evidence *held* to support finding that the parting of the lines of two steamships, moored at the end of a pier, while they were being moved forward in a strong tide, and which caused one of them to come into collision with and injure a third vessel, was due to improper handling of both vessels, in view of the state of the tide, which rendered them equally liable for the damage to the third vessel.

Appeal from the District Court of the United States for the Southern District of Texas; Joseph C. Hutcheson, Jr., Judge.

Suit for collision by the Kingdom of Italy, owner of the steamship Alatrium, against the United States Shipping Board Emergency Fleet Corporation, owner of the steamship Lordship Manor which filed a cross-libel against the steamship, Taiho Maru, claimed by the Kokusai Kisen Kabushiki Kaisha. Decree for libelant, from which the claimant of the Taiho Maru appeals. Affirmed.

W. T. Armstrong, of Galveston, Tex., George C. Sprague, of New York City, and W. E. Cranford, of Galveston, Tex. (Hunt, Hill & Betts and Edna F. Rapallo, all of New York City, on the brief), for appellant.

Wm. B. Lockhart and John W. Lockhart, both of Galveston, Tex., H. M. Holden, U. S. Atty., of Houston, Tex., H. C. Hughes, of Galveston, Tex., and J. Frank Staley, Sp. Asst. Atty. Gen. (Lockhart, Hughes, Lockhart & Rayzor, all of Galveston, Tex., on the brief), for appellees.

Before WALKER and BRYAN, Circuit Judges, and GRUBB, District Judge.

GRUBB, District Judge. This is an appeal from a decree of the District Court for the Southern District of Texas, sitting in admiralty. The original libel was filed May 18, 1921, by the kingdom of Italy, owner of the steamship Alatrium, against the United States Shipping Board Emergency Fleet Corporation, owner of the Steamship Lordship Manor, to recover damages because of a collision between the two steamships that occurred on May 13, 1921, at Pier 34, in the harbor of Galveston. On May 20, 1921, the United States Shipping Board Emergency Fleet Corporation, as owner of the Lordship Manor, an-

⊚⊃For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

swered and filed a cross-libel in said cause, asking for judgment against the Japanese steamship Taiho Maru, alleging that the collision between the Alatrium and the Lordship Manor was caused by the unskillful handling of the Taiho Maru, for any sum that might be adjudged due the Alatrium. The owner of the Taiho Maru answered the cross-libel denying the faults alleged against it and claiming that the collision was due to the sole negligence of the Lordship Manor.

The District Court rendered a decree holding the owners of the Alatrium entitled to recover from the United States Shipping Board Emergency Fleet Corporation the sum of $9,323.52, with interest and costs, and further that the United States Shipping Board Emergency Fleet Corporation recover against the owners of the Taiho Maru one-half of that amount with interest and one-half of the costs. An appeal was taken by the owner of the Taiho Maru. The contest on this appeal is between the owner of the Lordship Manor and the owner of the Taiho Maru. The owner of the Alatrium, while an appellee, is not involved in the real controversy. The question presented by the controversy is whether the Taiho Maru was responsible wholly, partly, or at all, for the collision between the Lordship Manor and the Alatrium.

The three steamships were tied up at Pier 34, in Galveston Harbor, at the time of the collision. The Alatrium was moored at the side of the pier and the two other vessels along the head of the pier. In order to make room along the head of the pier, for a fourth vessel, it became necessary to move the Lordship Manor and the Taiho Maru further westwardly along the head of the pier, in the direction of the Alatrium. The stern of the Alatrium was near or at the corner of the pier, or overlapped it. The movement had been accomplished on former occasions in much the same way, except under different tidal conditions. The method was to let the stern of the Lordship Manor out into the channel and so make room for the bow of the Taiho Maru to nose up into the space between the stern of the Lordship Manor and the pier. The tide was running west and very swiftly when the movement was attempted. The stern lines of both vessels parted during the movement allowing the Lordship Manor to go adrift and pivot on the corner of the pier and collide with the Alatrium.

There was a question as to whether the damage to the Alatrium was done then or at a subsequent occasion, when a second collision between the two occurred, after the Lordship Manor had been taken in charge by a tug. The Taiho Maru was in no way responsible for the second collision. Both the commissioner and the District Judge found that all the damage to both the Alatrium and the Lordship Manor was the result of the first collision, and the evidence amply supports this finding. This leaves the question of their respective responsibility for the first collision necessary to be determined, as between the Lordship Manor and the Taiho Maru. If the American ship broke loose and went adrift, and collided with the Alatrium, because her stern lines were insufficient, even without any additional strain put on them by the Japanese vessel, then the American ship alone would have to respond to the damage done the Alatrium and suffer her own damage.

If the Japanese ship negligently put an undue strain on the American ship during the movement, either because of insufficient stern lines or of bad handling, and thereby contributed to the breaking loose of the American ship, and so to the collision, then the American ship would be entitled to indemnity, if guilty of no fault herself, or to contribution if both ships were to blame.

The stern lines of both vessels parted. The District Court found, and we agree with the finding, that the stern lines of the Taiho Maru parted first. The Lordship Manor had but one stern line to the wharf and that was a spring line. Her other stern lines were attached to the Japanese vessel. The lines parted after the stern of the American vessel had been moved away from the pier far enough to allow the Japanese vessel to advance her bow for a distance of about 60 feet between the pier and the stern of the Lordship Manor. Moving the stern of either ship out into the channel caused the ship to encounter the force of the tide against its side, and to exert a pressure on the lines by means of which it was moored. The tide was running strong in the same direction in which the vessels were to be moved. Its force would be naturally greater against the side of the Japanese vessel, because the American vessel was partly protected from the force of the tide by being in the lee of the Japanese vessel. To accomplish the movement, it was necessary to move the stern of the American vessel from along the side of the pier into the channel in order to let the Japanese vessel bring its bow between the American vessel and the dock.

On the other hand, it was not necessary, to accomplish the movement, for the stern of the Japanese vessel to be moved away from the line of the dock into the channel. The Japanese vessel could have remained parallel to the dock, and, in view of the state of the tide, it was important for it to do so. It is not a matter of dispute that the stern of the Japanese vessel was away from the dock and out into the channel, at the time the lines parted. There is a dispute as to the cause of its being there—whether, on the one hand, it was due to a strain put on the Japanese vessel by the lines of the American vessel, which were fastened to it, or to the breaking of the stern line of the American vessel, or, on the other hand, to a negligent handling of the Japanese vessel by those of its crew, who were assisting in the movement.

We have reached the conclusion that proper care and skill would have enabled the crew of the Japanese vessel to have kept their boat parallel to the dock during the movement, and have kept its stern from swinging out into the channel, and that a negligent failure to do this caused the stern lines of the Japanese vessel to part, and caused the spring line of the American vessel to break, and made it necessary for the stern lines of the American vessel that were fastened to the Japanese vessel to be detached, causing the vessels to jam together and the American vessel to go adrift. We think the better evidence shows that the stern lines of the Japanese vessel parted first, and that, when they parted, the stern of the Japanese vessel was too far out from the dock in the sweep of the tide, and that its position brought about the

strain on its stern lines which caused them to break. Even if the stern lines were sufficient to have held her, but for her position in the channel and the force of the tide, if this position was due to faulty handling, her liability would be the same.

We find that faulty handling caused her to break loose from her stern fastenings, thereby putting an additional strain on the American ship. We also find that the American ship was not moored to the pier properly, and that part of the fault was therefore hers, considering that the movement was being made in the face of a swift tide, which should have been known and taken into account. As we have determined that the fault of each vessel contributed to the collision, the decree of the District Court, which divided the total damages to the ships in collision equally between the owner of the Lordship Manor and the Taiho Maru, was a proper one. Erie Railroad Co. v. Erie, 204 U. S. 220, 27 Sup. Ct. 246, 51 L. Ed. 450; The Ira M. Hedges, 218 U. S. 264, 31 Sup. Ct. 17, 54 L. Ed. 1039, 20 Ann. Cas. 1235.

The decree of the District Court is therefore affirmed.